IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES W. MYART JR., | § § § | |
| *Plaintiff,* | § § | SA-19-CV-00906-OLG |
| vs. | § § § | |
| CITY OF SAN ANTONIO, RON NIRENBURG, MAYOR, CITY OF SAN ANTONIO; ERIC WALSH, CITY MANAGER; LETICIA VACEK, SAN ANTONIO CITY CLERK; AND JADA ANDREWS-SULLIVAN, AS COUNCIL PER OF DISTRICT 2, | § § § § § § § § § § | |
| *Defendants.* | § | |

# REPORT AND RECOMMENDATION AND ORDER
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6) [#8]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#5]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The motion should be granted, and Plaintiff's claims against Defendants City of San Antonio, Ron Nirenberg, Eric Walsh, and Leticia Vacek should be dismissed. The undersigned will also order Plaintiff to show cause to the District Court why his claims against Councilwoman Jada Andrews-Sullivan should not be dismissed for failure to state a claim. The District Court should consider Plaintiff's response or lack thereof in issuing its Order on this report. In light of these recommendations, the undersigned will dismiss as moot Plaintiff's Motion for Permission for Electronic Filing [#17].

1

## I. Background

Plaintiff filed his Sworn/Verified Original Petition in state court on July 29, 2019 against the City of San Antonio, the Mayor of San Antonio (Ron Nirenberg), the City Manager of San Antonio (Eric Walsh), the San Antonio City Clerk (Leticia Vacek), and San Antonio City Council Member Jada Andrews-Sullivan, alleging that Defendants conspired to seat Councilwoman Andrews-Sullivan on City Council, despite the fact that she does not live in the district she was elected to represent. (Orig. Pet. [#1-2].) According to Plaintiff, Councilwoman Andrew-Sullivan used her mother's address, not her own, in order to be eligible for election. Plaintiff asserts that the acts of Defendants violate his civil rights. Defendant the City of San Antonio removed the Petition to federal court on July 29, 2019. (Notice of Removal [#1].)

Following removal, Plaintiff filed a motion requesting an emergency hearing to establish Ms. Andrew-Sullivan's residency as well as motion for a TRO "and injunctive relief." The undersigned denied Plaintiff's request for an emergency hearing and issued a report and recommendation recommending that Plaintiff's motion for a TRO be denied [#6]. Plaintiff appealed the undersigned's order and filed objections to the report. The District Court affirmed the undersigned's ruling and adopted the report and recommendation on September 9, 2019 [#15]. The undersigned's report and recommendation also ordered the parties to file briefs supporting their position that the Court had subject-matter jurisdiction over this case at the time of removal. Defendant the City of San Antonio, the removing party, filed its brief as ordered, arguing that Plaintiff alleges that his case arising under the Voting Rights Act of 1965, 52 U.S.C. § 10101, *et seq.*, and therefore this Court has federal-question jurisdiction over Plaintiff's Original Petition [#14]. Plaintiff filed a Notice of Appeal on September 24, 2019, which

indicates he is appealing the District Court's September 9, 2019 Order [#16]. The appeal remains pending before the Fifth Circuit Court of Appeals.[1]

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a

---

[1] The filing of Plaintiff's interlocutory appeal does not deprive this Court of jurisdiction to rule on Defendants' motion to dismiss because a motion for a TRO is a non-appealable interlocutory order. *See Faulder v. Johnson*, 178 F.3d 741, 742 (5th Cir. 1999) (Fifth Circuit lacks jurisdiction over denial of application for TRO); *United States v. Hitchmon*, 602 F.2d 689, 692 (5th Cir. 1979) (notice of appeal from non-appealable order does not deprive trial court of jurisdiction taken in interval between filing of notice and dismissal of appeal) (superseded by statute on other grounds as stated in *United States v. Martinez*, 763 F.2d 1297, 1308 (11th Cir. 1985)).

3

plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

This Court is mindful that in evaluating the merits of Defendants' motion to dismiss, a court views Plaintiff's *pro se* pleadings under a less stringent standard than those drafted by an attorney. *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983). As a result, Plaintiff's filings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from these pleadings. *See id.* The undersigned does remind the District Court, however, that although Plaintiff is proceeding *pro se* in this case, he did attend law school and previously was a member of the bar, so he has more legal training and experience than a typical *pro se* litigant.

Defendants' motion was filed on August 19, 2019 and served on Plaintiff by mail. According to this Court's Local Rules, Plaintiff's response to Defendants' motion was due within 17 days of the motions' filing, on or before September 5, 2019. *See* Loc. R. CV-7(e) (responses to dispositive motions due within 14 days of motion's filing); Fed. R. Civ. P. 6(a), (d) (adding three days to response deadline for service by mail and extending the deadline to Monday if the final date otherwise falls on a Sunday). To date, Plaintiff has not filed a response to the motion. Pursuant to Local Rule CV-7(e), if there is no response filed within the time period prescribed by the rules, the court may grant the motion as unopposed.

### III. Analysis

Defendants City of San Antonio, Ron Nirenberg, Eric Walsh, and Leticia Vacek move to dismiss the claims asserted in Plaintiff's Original Petition for failure to state a claim. The Court should grant the motion.

Plaintiff's Original Petition alleges that Defendants knowingly "perpetuated a scheme to systematically seat [Andrew-Sullivan] in [District 2] knowing she does not live in this district."

(Orig. Pet. [#1-2] at 2.) According to Plaintiff, Andrews-Sullivan used her mother's address, which is located in the District, when she in fact lives elsewhere. (*Id.* at 2–3.) Plaintiff contends these acts constitute "official oppression" and violate the Voting Rights Act of 1965, the Texas Election Code, and Plaintiff's "constitutional right" to be represented by a person who meets the residency requirements pursuant to state law and the San Antonio City Charter. (*Id.* at 2–9.) Plaintiff's claims against Defendants should be dismissed because Plaintiff's Petition fails to state any plausible claim under any federal or state law.

A.  **Plaintiff's Petition does not allege a violation of the Voting Rights Act.**

The purpose of the Voting Rights Act is "to eliminate the negative effects of past discrimination on the electoral opportunities of minorities." *Thornburg v. Gingles*, 478 U.S. 30, 65 (1986). Plaintiff does not identify which section of the Voting Rights Act that he is claiming Defendants violated. And the undersigned cannot identify any provision of the Act that would apply to Plaintiff's factual allegations. The Petition's reference to "One Man-One Vote" appears to implicate the line of Supreme Court cases on vote dilution. The prohibition on vote dilution originates in Subsection 2(a) of the Voting Right Act, which prohibits states and their political subdivisions from imposing any voting qualifications or prerequisites to voting that would result in the denial or abridgment of the right to vote of any citizen who is a member of a protected class of racial and language minorities. 52 U.S.C. § 10301. *See also Thornberg*, 47 U.S. at 43. But vote-dilution claims usually arise when nonresidents are allowed ***to vote*** in elections (thereby diluting the vote of residents), not when a non-resident ***is elected***. *See Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964) ("'The right to vote includes . . . the right to have the vote counted at full value without dilution or discount.'") (quoting *South v. Peters*, 339 U.S. 276, 279 (1950) (J. Douglas, dissenting)). Plaintiff's allegations cannot be construed to be asserting that any acts of

Defendants prevented him from exercising his right to vote in San Antonio's City Council election or otherwise diluted the impact of his vote. At most he is claiming that a non-resident should not have been permitted to run for or win the election in which he participated. To the extent this violated any law about residency requirements for candidates, that law does not have its origins in any provision of the Voting Rights Act.

There are other provisions of the Voting Rights Act, but all of them ultimately prohibit acts obstructing the right to vote. Again, Plaintiff has not alleged that he was not able to vote, claimed that his vote was not counted, or explained how his vote was allegedly diluted. Instead, he alleges that the individual who was elected to City Council misrepresented her address and therefore was not an eligible candidate for election. These allegations do not state a plausible claim under the Voting Rights Act.

**B.** **Plaintiff's Petition does not allege a violation of any right guaranteed by the U.S. Constitution or federal civil rights laws.**

Plaintiff alleges that Defendants' conduct violated his "constitutional right" to be represented by someone who satisfies the residency requirements imposed by state law and municipal ordinance. As an initial matter, Plaintiff has not identified any provision of the United States constitution or other federal civil rights law that guarantees the him the right to be represented by someone who satisfies state and local requirements to run for office. But even if he could, his claim would still fail.

Section 1983 of the Civil Rights Act protects against civil rights violations by those acting under color of state law. 42 U.S.C. § 1983. A suit against a state official in his or her official capacity, such as the mayor or city manager as here, is not a suit against an official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71

(1989). Accordingly, Plaintiff's allegations against Defendants, all of whom hold office in the City of San Antonio, are essentially allegations against the City of San Antonio.

To impose liability against a municipality under Section 1983, the constitutional violation "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In other words, there must be allegations of an official policy or custom that is the "moving force" behind the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff has not identified any such policy or custom. Plaintiff simply alleges, without any specificity, that the City knowingly perpetuated Andrews-Sullivan's alleged scheme to violate state and local election laws. These allegations fail to allege the basic elements of a claim for municipal liability against Defendants. Accordingly, even if Plaintiff could identify a violation of his federal civil rights, he has not alleged Defendants were the moving force behind the violation. The Court should conclude Plaintiff's allegations fail to state a claim under Section 1983.

**C.    The District Court should decline to exercise supplemental jurisdiction over Plaintiff's claims for violations of state and municipal election law, or alternatively, consider and dismiss them for lack of standing.**

Defendants do not separately address Plaintiff's allegation regarding the Texas Election Code in their motion to dismiss but rather group this claim with Plaintiff's Voting Rights Act claim. Insofar as Plaintiff is attempting to assert a separate violation of the Texas Election Code or San Antonio City Charter, however, the Court should decline to exercise supplemental jurisdiction over these claims and remand them to state court. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Alternatively, if the Court does not remand the state-law claims, the Court should dismiss Plaintiff's election-law claims because Plaintiff's pleading does not allege facts that demonstrate he has standing to assert claims for violations of the Texas Election Code or San Antonio City Charter. Federal courts must raise issues of Article III standing *sua sponte*, as standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiff claims Defendants violated the Texas Election Code or San Antonio City Charter, but his pleading does not specify which provisions he is claiming they violated. Plaintiff focuses his allegations on Andrews-Sullivan's alleged failure to reside in the district that she was elected to represent. The Texas Election Code does impose a residency requirement, which requires that a candidate for any public office in Texas "have resided continuously in the state for 12 months and in the territory from which the office is elected for six months immediately preceding" a specific date depending on the type of office and candidate. Tex. Elec. Code. § 141.001(a)(5). The City Charter of the City of San Antonio reiterates this requirement and specifies that each member of the City Council shall reside within the boundaries of the district from which he or she is elected at least six months prior to filing his or her application and continuing during the term of office. San Antonio City Charter, Art. II, § 4. Construing Plaintiff's factual allegations as true (as the Court must at this stage), it appears Andrews-Sullivan would not have met these residency requirements when she was elected to the San Antonio City Council. In his lawsuit, Plaintiff contends that as remedy for this legal violation, the Court should grant a permanent injunction prohibiting Andrews-Sullivan from sitting on City Council and should award Plaintiff himself $1.5 million in damages. (Orig. Pet. [#1-2] at 5, 11.)

The Texas Election Code provides that "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." Tex. Elec. Code § 273.081. There is no basis in the Election Code for the recovery of monetary damages. As to Plaintiff's request for injunctive relief, the Texas Supreme Court has held that Section 273.081 does not create standing—it merely authorizes injunctive relief. *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 17–18 (Tex. 2011). Under Texas law, a plaintiff must still show how he or she has been injured or damaged "other than as a member of the general public." *Id.* at 17 (citing *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966)). Voters lack standing to pursue complaints under the Election Code where they allege "only generalized grievances about the lawfulness of government acts." *Id.* "A desire to have the government act in conformance to the law is not enough" without the assertion of concrete, particularized harm to justify a claim. *Id.* at 18.

The same principles undergird the doctrine of Article III standing in federal court, which requires the constitutional minimum of (1) an injury in fact—and invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent as opposed to conjectural or hypothetical; (2) a casual connection between the injury and the conduct complained of; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision. *Lujan*, 504 F.3d at 560–61. Generalized grievances in which a plaintiff is "plainly undifferentiated" from members of the general public are inconsistent with the framework of Article III. *United States v. Richardson*, 418 U.S. 166, 171, 176–77 (1974).

This is precisely the issue with Plaintiff's Petition, which complains generally of the failure of Defendants to enforce the Texas Election Code and San Antonio City Charter.

9

Plaintiff's only identified injury is his lack of a representative in City Council who meets the residency requirements set forth in these laws. Because Plaintiff has not identified a concrete injury particular to him that is distinct from a general interest in having the laws enforced, he has not alleged Article III standing or standing under Texas law. As the Texas Supreme Court explained recently, Plaintiff's allegations, which address "system integrity . . . are policy disputes more appropriately resolved in the give-and-take of politics" and not a judicial forum. *Andrade*, 345 S.W.3d at 18.

### D. Plaintiff is required to show cause why his claims against Andrews-Sullivan should not be dismissed as well.

The only Defendant and non-municipal person who has not joined in Defendants' motion to dismiss is Andrews-Sullivan. There is no indication in the record that Plaintiff has requested the issuance of summons as to Andrews-Sullivan or obtained a waiver of service. Even if Plaintiff were to serve Andrews-Sullivan within the time period set forth in Rule 4(m) of the Federal Rules, his claims against her would fail due to the same defects identified *supra*. The undersigned will therefore order Plaintiff to show cause why his claims against Andrews-Sullivan should not also be dismissed by the District Court for failure to state a claim. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (a court may sua sponte dismiss a plaintiff's claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as the plaintiff has notice of the Court's intention and an opportunity respond). The District Court should review any response filed by Plaintiff to the Court's show cause order in conjunction with its review of this report and recommendation and any objections filed thereto.

### IV. Order and Recommendation

Having considered Plaintiff's live pleading, Defendants' motion, and the lack of response thereto, the Court recommends that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ.

Proc. 12(b)(6) [#8] be **GRANTED** and Plaintiff's claims against Defendants the City of San Antonio, the Mayor of San Antonio (Ron Nirenberg), the City Manager of San Antonio (Eric Walsh), and the San Antonio City Clerk (Leticia Vacek) be dismissed. In light of this recommendation,

**IT IS ALSO ORDERED** that Plaintiff **show cause** why his claims against Defendant Jada Andrews-Sullivan should not be dismissed for failure to state a claim within **14 days** of this Order.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Permission for Electronic Filing [#17] is **DISMISSED AS MOOT**.

### V.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to

11

file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of October, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE